**In re James Wesley GRADY, III, Jocelyn Vaniesa Grady, Debtors.**

**No. 06–60726 CRM.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 21, 2006.

Jayson R. Davis, Susan H. Shiptenko, Berry and Associates, Atlanta, GA, for Debtors.

### ORDER

C. RAY MULLINS, Bankruptcy Judge.

**THIS MATTER** is before the Court on the Objection to Confirmation and Request for Dismissal of Case (the "Objection") (Doc. No. 14). The Chapter 13 Trustee (the "Trustee") filed the Objection on March 2, 2006. A hearing was held on the Objection on May 9, 2006.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), as well as Rule 1070–1 of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

The issue before the Court is whether the Debtors are required to pay the disposable income to unsecured creditors according to the Current Monthly Income form, or the projected disposable income as set forth in section 1325(b)(1)(B) of the Bankruptcy Code, which is provided in Schedule J. The Court holds that the Debtors are required to pay the projected disposable income amount to the unsecured creditors based on their financial situation as of the petition date.

## I. FACTUAL BACKGROUND

James and Jocelyn Grady (the "Debtors") filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 27, 2006. Since this case was filed after October 17, 2005, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") apply. According to Fed. R. Bankr.P. (Interim Rule) 1007(b)(6),[1] a debtor filing a petition under Chapter 13 is required to file Official Form B22C, which is referred to as the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "CMI form"). The Debtors properly filed the CMI form with their petition, schedules, and statement of financial affairs. The CMI form is used to calculate a debtor's current monthly income, applicable commitment period, and disposable income. Current monthly

---

1. Fed. R. Bankr.P. (Interim Rule) 1007(b)(6) provides, "A debtor in a Chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form and, if the debtor has current monthly income greater than the median family income for the applicable state and family size, a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form."

income on Line 2 of the CMI form, is defined as "the average monthly income from all sources that the debtor receives without regard to whether such income is taxable income, derived during the *6–month period ....immediately preceding* the date of the commencement of the case." 11 U.S.C. § 101(10A) (emphasis added). Therefore, the Debtors' current monthly income was averaged for the period of July 2005 through January 2006. In this case, the Debtors' current monthly income on Line 2 of the CMI form is $7,368.28, which consisted [2] of Mr. Grady's gross monthly income of $4,827.78, and Mrs. Grady's gross monthly income of $2,540.50.

The CMI form is also utilized to determine the Debtors' applicable commitment period for their Chapter 13 plan. The applicable commitment period is determined first by multiplying the Debtors' current monthly income by 12 (hereinafter "annualized current monthly income"), which is $88,419.36. The annualized current monthly income is then compared to the median family income [3] for their size of four persons in Georgia, which is $58,060. According to section 1325(b)(4), if a debtor's annualized current monthly income is less than the median family income, then the applicable commitment period is three years. 11 U.S.C. § 1325(b)(4)(A). If a debtor's annualized current monthly income is greater than the median family income, then the applicable commitment period is five years. *Id.* Since the Debtors' annualized current monthly income is greater than the median family income by $30,359.36, the Debtors' applicable commitment period is five years. *See* 11 U.S.C. § 1322(d)(1)(C); 11 U.S.C. § 1325(b)(4)(A)(ii).

Finally, the Debtors must calculate the amount of disposable income on its CMI form. Disposable income is calculated by deducting the Debtors' current monthly income from expenses "established by the IRS National Standards and local Standards for the area in which the debtor resides." *In re Walker,* 2006 Bankr.LEXIS 845, *5 (Bankr.N.D.Ga.2006) (Drake, J.). In this case, the Debtors' current monthly income of $7,368.28, was subtracted from expense deductions of $6,176, resulting in monthly disposable income of $1,192.28.

The dispute herein arose because the Debtors propose monthly plan payments in the amount of $1075, instead of the $1,192.28 calculated in the CMI form. The Trustee argues that pursuant to 11 U.S.C. § 1325(b), the Debtors are required to pay the full amount of disposable income to unsecured creditors, as provided in the CMI form, Line 58. Section 1325(b) provides in pertinent part:

"(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–

(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period *beginning on the date*

*that the first payment is due under the plan* will be applied to make payments to unsecured creditors under the plan.

---

**2.** Note: There is no grammatical error since the relevant figure was for the six months prior to filing. Therefore, it is proper to state, "Debtors' current monthly income ... *consisted* ..." (emphasis added).

**3.** Median family income is defined as "the median family income both calculated and reported by the Bureau of Census in the then most recent year." 11 U.S.C. § 101(39A)(A).

(2) For purposes of this subsection, the term *"disposable income" means current monthly income received by the debtor* (other than child supposed payments, foster care payments, or disability payments for a dependent child ... ) less amounts reasonably necessary to be expended–

> (A)(i) for the maintenance or support of the debtor or dependent of the debtor ... that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions[.]"

11 U.S.C. § 1325(b) (emphasis added). The Debtors contend that section 1325(b)(1)(B) does not mandate that they pay unsecured creditors the disposable income calculated on the CMI form. The Debtors rely on the term "projected" in section 1325(b)(1)(B), which modifies the term "disposable income." The Debtors contend that since the term "projected disposable income" describes the monthly payment amount owed to unsecured creditors in section 1325(b)(1)(B), and not the term "disposable income" as provided in section 1325(b)(2), the Code permits them to propose the more current, actual amount available for distribution.

Currently, Mrs. Grady suffers from a heart condition that prevents her from working. As a result, the Debtors' actual combined current monthly income on Schedule I decreased from $7368.28 to $5313. Due to the significant reduction in income, the Debtors argue that they no longer have the means to pay unsecured creditors according to the "disposable income" calculation in the CMI form.

## II. DISCUSSION

■ The Court must first analyze "the statute itself" to determine whether the Debtors are required to pay the disposable income according to the CMI form or as "projected disposable income" under section 1325(b)(1)(B). *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Second, this Court must "look at the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Bautista v. Star Cruises,* 396 F.3d 1289, 1295 (11th. Cir.2005)(quoting *Robinson v. Shell Oil,* 519 U.S. 337, 341, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997)). If the language in the statute is plain, then the "Court should generally enforce that language giving each word its common usage." *In re Jass,* 340 B.R. 411, 415 (Bankr.D.Utah 2006) (internal citations omitted).

■ The plain language of section 1325(b)(1)(B) provides that the term "projected disposable income," is different from the term "disposable income" under section 1325(b)(2). The term "projected disposable income" in section 1325(b)(1)(B) is not defined in the Bankruptcy Code and is a pre-BAPCPA term. However, Congress redefined disposable income in BAPCPA as current monthly income less reasonable expenses. 11 U.S.C. § 1325(b)(2). The term "current monthly income" is an average of gross monthly wages of the six calendar months preceding the petition date. 11 U.S.C. § 101(10A). Instead of defining the amount to be paid to unsecured creditors as "disposable income," Congress did not revise the language of section 1325(b)(1)(B) "projected disposable income" to "disposable income." Congress' continued use of the additional term "projected" in section 1325(b)(1)(B) indicates a difference from "disposable income" in section 1325(b)(2). If Congress wanted the plan payment amount under section 1325(b)(1)(B) "to be synonymous with section 1325(b)(2)" definition of disposable income, then "projected" would of been deleted from section 1325(b)(1)(B). *In re*

*Kibbe*, 342 B.R. 411, 414 (Bankr.D.N.H. 2006) (internal citations omitted). Consequently, "[t]he significance of the word 'projected' is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with section 1325(b)(1)(B)." *In re Jass*, 340 B.R. 411, 416 (Bankr.D.Utah 2006). Therefore, the CMI form allows the Court and the Chapter 13 Trustee to estimate the amount of disposable income available to the unsecured creditors. However, disposable income on the CMI form is not the ultimate measure of the Debtors' financial condition and ability to fund plan payments. *See In re Hardacre*, 338 B.R. 718, 722 (Bankr.N.D.Texas 2006) ("The term 'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income. This conclusion is buttressed not only by the anomalous results that could occur by strictly adhering to section 101(10A)'s definition of 'current monthly income,' but because, taken as a whole, section 1325(b)(1) commands such a construction."). If a debtor's circumstances change from the six months preceding bankruptcy to the petition date, then the Court should evaluate the debtor's past and current financial status to determine disposable income.

■ The Court considers the "broader context" of this dispute of the definition of projected disposable income with the other provisions and principles of the Bankruptcy Code. BAPCPA did not replace the Bankruptcy Code, it amended and added several new provisions. As a result, any analysis must start with the ample statutory interpretation, legislative history (along with stated policies), and case law develop-

ment from the 1978 Code, unless it is clear that there has been an abrogation. One of the most important policies of the Bankruptcy Code is to provide relief for an "honest but unfortunate debtor," thereby allowing him to make a "fresh start." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Haas*, 48 F.3d 1153, 1156 (11th Cir.), *cert. denied*, 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994); *Murphy & Robinson Inves. Co. v. Cross (Matter of Cross)*, 666 F.2d 873, 879–80 (5th Cir.1982). *See Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.") (internal citations omitted). The Debtors' efforts to repay their debts by utilizing their *actual* disposable income, and not the prepetition and backward looking disposable income calculation on the CMI form, is in harmony with the requirement that the Debtors are to propose a plan in good faith under section 1325(a)(3). The Debtors are proposing a plan that they can most realistically complete within the applicable commitment period, based on their current financial condition.

The "fresh start" principle originating in case law under the 1978 Bankruptcy Code was not abrogated by the enactment of the BAPCPA provisions.[4] One very clear goal of BAPCPA is to channel more debtors into Chapter 13 repayments plans. In aid

---

4. "Whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *In re Welzel*, 275 F.3d 1308, 1317

(11th Cir.2001) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988)).

of the "fresh start" goal, the Bankruptcy Code provides flexibility to assist debtors in completing their plans when unforeseen circumstances arise. An example of the Bankruptcy Code's flexibility is the statutory authority to fashion a plan modification under sections 1323 and 1329.[5] A debtor's ability to modify a plan has not been expressly abrogated by BAPCPA, at least so far as this Court can determine. Instead, BAPCPA added increased flexibility by authorizing the modification of a confirmed plan to reduce payments due to a debtor's need to purchase health insurance, if reasonable and necessary. *See* 11 U.S.C. § 1329(a)(4). The Trustee's position would prevent the Debtors from utilizing the very provisions of the Bankruptcy Code enacted to meet changing financial conditions.

■ A debtor needs the ability to fund a plan that he or she can afford based on his or her circumstances at the current time. "Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible pre-payment plans funded primarily from *future income*." *In re Hoggle*, 12 F.3d 1008, 1011 (11th. Cir.1994) (emphasis added). The Bankruptcy Code requires Courts to evaluate a debtor's financial circumstances from a flexible and forward looking perspective when deciding whether they are paying a sufficient amount of disposable income to unsecured creditors. Consider-

ing that the Bankruptcy Code permits a debtor to modify the confirmed plan if his financial condition changes, it appears Congress, by using the term "projected disposable income" in section 1325(b)(1)(B), intended courts to consider a debtor's disposable income at the time of confirmation. It is not logical for BAPCPA to limit a debtor to a plan based upon disposable income averaged over the six months preceding the petition date, when the debtor's financial condition is dramatically different at the time of confirmation.[6] If the Debtors are required to pay the disposable income as calculated on the CMI form only, they would not be able to modify the plan under section 1329(a). If BAPCPA is interpreted in this fashion, these Debtors will not be able to voluntarily repay a portion of their debts through a Chapter 13 plan. Certainly the proponents of BAPCPA did not intend to close the bankruptcy court doors to debtors who voluntarily, and in good faith, seek to repay creditors with the funds they actually have on hand each month. The policy of a "fresh start" for "honest but unfortunate debtors" is not fulfilled by such a result.

## III. CONCLUSION

The Court has carefully considered the statutory provisions and arguments presented by the parties. Due to Mrs. Grady's heart condition and inability to work, the Debtors' income decreased significant-

---

5. Section 1329 provides in pertinent part: (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to

"(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments; or
(3) alter the amount of the distribution to a creditor whose claim is provided for by the

plan to the extent necessary to take account of any payment of such claim other than under the plan[.]" 11 U.S.C. § 1329(a).

6. *In re Jass*, 340 B.R. 411, 418 (Bankr.D.Utah 2006) ("[W]ere the Court to hold that section 1325(b)(1)(B)'s reference to 'projected disposable income' requires a debtor to always pay the number resulting from Form B22C, it would be creating surplusage–the term 'projected' would have no effect.").

ly from the six month period preceding their petition date to the actual petition date. The Court recognizes that the Debtors are honestly attempting to repay their debts to the best of their abilities, as they have made timely Chapter 13 plan payments and mortgage payments. Upon a complete review of section 1325(b), this Court believes that Congress intended the Debtors to propose a monthly payment to unsecured creditors based on their financial situation as of the date when the first payment is due. The Debtors are authorized to pay the projected disposable income under Schedule J as opposed to the disposable income on the CMI form. For the foregoing reasons,

**IT IS ORDERED** that the Chapter 13 Trustee's Objection to Confirmation be and is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Debtors Chapter 13 plan be and is hereby **CONFIRMED.**