**In re Constance A. LUTON, Debtor.**

**No. 6:06–bk–70629M.**

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

March 8, 2007.

Jimmy D. Eaton, Attorney at Law, North Little Rock, AR, for Debtor.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

Before the Court is the Chapter 13 Trustee's objection to confirmation of the plan proposed by Constance A. Luton ("Debtor"), who filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code on April 8, 2006.

The Trustee's objection raises a difficult issue related to a provision added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The issue is whether the new term "applicable commitment period" refers to the required duration of a Chapter 13 plan or whether

the term is a number used to calculate the minimum amount a debtor must pay to unsecured creditors in order to obtain a discharge. In short, the question for determination is whether the term "applicable commitment period" should be characterized as temporal or monetary.

The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in this matter.

## FACTS

The facts in this case are not in dispute. The Debtor has no priority or secured creditors. She scheduled unsecured, nonpriority claims totaling $22,706.07. The Debtor's plan proposes payments of $75.00 per month for a period of 36 months, which calculates to a total base amount of $2700.00.

The Trustee objects to confirmation because one of the plan provisions allows the Debtor the option of paying off the plan in less than 36 months. This plan provision states that

The debtor may at any time after confirmation of the plan complete payments under this plan by prepaying the remaining Base Plan Amount of this plan (less any remaining long-term secured claim payments which was [sic] current or will be brought current upon such payment and also less any unaccrued interest on secured claims) . . .

(Ex. 3, Chapter 13 Plan.)

The Debtor's income includes receipt of $407.00 per month in social security benefits. Her assets are valued at a total of $945.00. (Ex. 2, Schedule B—Personal Property.) She has three persons in her household, and her current monthly income when multiplied by 12 is less than the median income for a family of three in Arkansas.[1]

Apparently the Debtor computed her disposable income from Schedules I and J. Schedule I reflects total monthly income of $1524.00, including the $407.00 a month in social security benefits. Schedule J reflects total necessary expenses of $1424.00, which leaves disposable monthly income of $100.00. The Trustee does not object to a monthly plan payment of $75.00 per month even though the projected disposable income calculates to $100.00 per month.

## DISCUSSION

To determine if the Bankruptcy Code allows for a plan provision permitting an early payoff, the Court must first review how BAPCPA changed the way debtors calculate the amount to be paid into a Chapter 13 plan. That inquiry begins with a new term, "current monthly income."

Pursuant to its definition, current monthly income is calculated by determining the monthly average amount of income the debtor received from all sources for the six-month period ending on the last day of the calendar month immediately preceding the filing of the case. 11 U.S.C. § 101(10A)(A)(2006). Income under this section includes payments from some nontraditional sources not at issue here and excludes other types of payments traditionally viewed as income, including social security benefits.

After the calculation of current monthly income, the debtor may propose to pay into the plan such amounts as the debtor deems appropriate. The total of these monthly payments may or may not pay all

---

1. Median annual income for a family of three living in Arkansas is $42,629.00, and the Debtor's annual income is scheduled at $16,980.00. (Ex. 4, Statement of Current Monthly & Disposable Income.)

claims in full. However, if the Trustee or the holder of an unsecured claim objects to confirmation, the plan is then subject to the requirements of 11 U.S.C. § 1325(b). If, as in the instant case, the plan does not propose to pay all claims in full, the debtor's plan must then comply with Section 1325(b)(1)(B), which sets out the following provision:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve a plan unless, as of the effective date of the plan . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B)(2006).

Thus, because the Trustee has objected to the plan, the Debtor must devote all her projected disposable income received in the applicable commitment period to payments to unsecured creditors.[2]

To arrive at the amount of disposable income the debtor has available to fund the plan, the debtor is entitled to subtract from current monthly income those amounts reasonably necessary for the sup-port of the debtor and the debtor's dependents. 11 U.S.C. § 1325(b)(2)(2006). If a debtor receives household income that is above the median income of the state where the debtor resides, the amount reasonably necessary for support is determined by using the means test provided for in Section 707(b)(2). 11 U.S.C. § 1325(b)(3)(2006). By implication, debtors whose income is below the state median calculate disposable income by using Schedules I and J, as was done prior to BAPCPA.[3] *In re Dew*, 344 B.R. 655, 660–61 (Bankr.N.D.Ala.2006); *In re Kibbe*, 342 B.R. 411, 414 (Bankr.D.N.H.2006), *aff'd*, 361 B.R. 302 (1st Cir. BAP 2007).

In addition to redefining disposable income, BAPCPA changed the language governing plan length in Section 1325(b)(1)(B) by deleting the phrase "three year period" and substituting the phrase "applicable commitment period." After determining the correct amount of disposable income, the debtor must satisfy the requirement, pursuant to Section 1325(b)(1)(B), that the projected disposable income will "be received in the applicable commitment period" to apply to payments to unsecured creditors.

Section 1325(b)(4) addresses the length of the applicable commitment period:

---

**2.** BAPCPA's addition of the concept of "current monthly income," which uses historical figures, is confusing because the Code retained the existing, forward-looking requirement of Section 1325(b)(1)(B) that the debtor commit all projected disposable income to the plan for the benefit of unsecured creditors.

**3.** Courts do not agree on the method to be used in calculating disposable income, and following the statutes literally may yield anomalous results. For example, a debtor above the median income using the means test calculation can, in many instances, correctly calculate a negative number as disposable income. This outcome occasionally occurs because the means test incorporates a combination of actual and hypothetical figures based on I.R.S. national and local standards and because current monthly income may differ from the debtor's actual income on the day the plan is proposed. *See In re Edmunds*, 350 B.R. 636, 645–46 (Bankr.D.S.C.2006) (discussing the different approaches in determining whether above-median income debtors may use a disposable income figure calculated from the means test or whether those debtors must modify the means test to determine projected disposable income); *In re Risher*, 344 B.R. 833, 836 (Bankr.W.D.Ky. 2006) (pointing out the differences between current monthly income and projected disposable income). The Trustee does not object to the Debtor's calculation of disposable income so that is not an issue in this case.

For purposes of this subsection, the 'applicable commitment period'—

(A) subject to subparagraph (B), shall be—

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse's combined, when multiplied by 12, is not less than—

(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and

(B) may be less then 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. § 1325(b)(4)(A) & (B) (2006).

Although courts disagree on the proper interpretation of 11 U.S.C. § 1325 as amended by BAPCPA, the majority view is that, as to treatment of unsecured creditors, the phrase "applicable commitment period" refers to a period of time and is not merely a multiplier used to determine the amount of distribution to unsecured creditors. Under this view, the debtor may not propose a plan provision to pay the plan off before the applicable commitment period has elapsed.

A variety of reasons support the majority view. *See, e.g., In re Slusher*, 359 B.R. 290 (Bankr.D.Nev.2007) (stating that the applicable commitment period stands for the appropriate amount of time during which the debtor has agreed to make payments); *In re Cushman*, 350 B.R. 207, 212–13 (Bankr.D.S.C.2006) (concluding that Code never refers to applicable commitment period as a multiplier; the legislative history supports this view in that the caption of Section 318 of the Act is "Chapter 13 plan to have five year duration in certain cases"; plain language of statute compels this result); *In re Girodes*, 350 B.R. 31, 35 (Bankr.M.D.N.C.2006) (finding the term "period" imposes temporal rather than monetary requirement); *In re Davis*, 348 B.R. 449, 455–57 (Bankr.E.D.Mich. 2006) (recognizing the word "period" means a chronological division; if Congress had intended a multiplier it could have clearly described it as such; if applicable commitment period is only used as a multiplier, 1325(b)(4)(B) would have no meaning; monetary approach represents a gross departure from pre-BAPCPA practice not justified by the language of the statute; terms "commitment" and "period" contemplate action over a period of time and do not on their face connote a formula to arrive at an amount; legislative history supports this view; this construction would permit debtors to cash out of Chapter 13 to the detriment of creditors); *In re Gress*, 344 B.R. 919, 923 (Bankr.W.D.Mo.2006) (ruling that applicable commitment period is a temporal rather than monetary requirement); *In re Dew*, 344 B.R. at 661 (finding Section 1322 sets maximum periods of plan length; Section 1325(b)(4)(A) sets minimum plan length); *In re Schanuth*, 342 B.R. 601, 607–608 (Bankr. W.D.Mo.2006) (ruling the word "period" denotes a chronological division; 1325(b)(4)(B) provides the only method to shorten the applicable commitment period; if the phrase is a multiplier it renders 1325(b)(4)(B) awkward if not meaningless; if the term is used as a multiplier it would

represent a gross departure from pre-BAPCPA practice not justified by the language of the statute); *In re McGuire*, 342 B.R. 608, 615 (Bankr.W.D.Mo.2006) (reasoning that 1325(b)(4)(B) provides the only way to shorten the applicable commitment period; this interpretation does not change pre-BAPCPA practice); *In re Crittendon*, No. 06–10322C–13G, 2006 WL 2547102 (Bankr.M.D.N.C. Sept.1, 2006) (stating the applicable commitment period refers to plan duration and is not a multiplier) (citations omitted).

Opposing the view expressed by the majority is the case of *In re Fuger*, 347 B.R. 94 (Bankr.D.Utah 2006), as well as some well-respected authorities. *See* 5 Keith M. Lundin, Chapter 13 Bankruptcy §§ 493 & 500 (3d ed. 2000 & Supp.2006); Henry E. Hildebrand, *Unintended Consequences: BAPCPA and the New Disposable Income Test*, Am. Bankr.Inst. J., March 2006, at 14, 54.[4] *See also In re Brady*, 361 B.R. 765, 776–77 (Bankr.D.N.J.2007)(stating that the applicable commitment period is a requirement that only applies if the debtor has projected disposable income to pay to unsecured creditors under the plan); *In re Lawson*, 361 B.R. 215, 219–21 (Bankr. D.Utah 2007)(finding that the applicable commitment period is fundamentally irrelevant in context of above-median debtors with negative monthly disposable income); *In re Alexander*, 344 B.R. 742, 750–51 (Bankr.E.D.N.C.2006) (recognizing that applicable commitment period is temporal rather than monetary, but ruling that a debtor without projected disposable income may propose a plan for a shorter period than the applicable commitment period); *In re Kagenveama*, No. 05–28079, 2006 Bankr.Lexis 259, at *9 (Bankr.D.Ariz. July 10, 2006) (stating that the applicable commitment period fixes the amount to be

paid and the time over which the payment must be made; however, if no payments are required to be paid to unsecureds because the debtor has no projected disposable income, the plan duration will be determined by other types of payments under the plan, such as those to secured creditors).

In his well-reasoned opinion, Judge Thurman observed that the applicable commitment period serves as both a method to calculate the amount of money to be paid to unsecured creditors and also denotes a period of time a plan should last. *In re Fuger*, 347 B.R. at 99. He further reasoned that Section 1325(b)(1)(B) focuses on the amount a debtor will return to the creditors rather than the length of time it might take the debtor to perform. He rejected the notion that 11 U.S.C. § 1325(b)(4)(B) is rendered meaningless if the applicable commitment period does not require the debtor to remain in the proposed plan for a three or five year period, pointing to the case at hand where the debtor's projected disposable income was calculated to be a negative number. The plan proposed to pay unsecured creditors a total of $500.00. The Court concluded that even though five years was the applicable commitment period, it made no sense to require the debtors to remain in Chapter 13 for sixty months to pay the $500.00 amount.

In his treatise, Judge Lundin discussed his view that the applicable commitment period is part of a formula used to arrive at the amount to be paid to unsecured creditors. He reasoned that once the correctly calculated amount is paid to unsecured creditors, statutory requirements are satisfied. He observed,

> By disconnecting the disposable income test from the actual financial circum-

---

**4.** For a discussion of the arguments on both sides of the issue, see Alane A. Becket & Thomas A. Lee, *Applicable Commitment Peri-* *od: Time or Money*, Am. Bankr.Inst. J., March 2006, at 16, 44–45.

stances of the debtor at confirmation, BAPCPA neutralized the way the disposable income test empowered trustees and unsecured creditors under prior law to force debtors to commit all of their *actual* disposable income at confirmation to funding the plan for at least three years. The only compulsion remaining is not temporal and is not based in the reality of the debtor's budget. Instead, it is an artificial mathematical calculation—disposable income multiplied by applicable commitment period—that will not produce a predictable plan length in Chapter 13 cases.

5 Keith M. Lundin, Chapter 13 Bankruptcy at § 500–7.

This Court agrees with many of the arguments supporting the minority view. The applicable commitment period does indeed function as a multiplier in calculating the minimum amount to be paid to unsecured creditors. Furthermore, it is difficult to understand why Congress would delete the phrase "three-year period" and substitute "applicable commitment period" as applied to below median-income debtors if Congress intended the phrases to mean the same thing. However, when the phrase "applicable commitment period" is examined in the context of all the other provisions of the Code, particularly Sections 1325(b)(4)(A) and 1325(b)(4)(B), the Court concludes that Congress intended a literal interpretation of the phrase: a chapter 13 plan must last at least three or five years depending on whether the debtor is above or below the median income level.

The reasoning of the majority view, in my judgment, is the most logical interpretation to give effect to Congressional intent, although a narrow reading of the text of the statute certainly does support the minority view, as various commentators have concluded. *See, e.g.*, Henry E. Hildebrand, *Unintended Consequences: BAPCPA and the New Disposable Income Test,* Am. Bankr.Inst. J., March 2006, 14 at 54 (stating that a plan with a zero dividend to unsecured creditors may satisfy the statutes by paying the dividend over a time period shorter than the applicable commitment period). The strongest argument supporting the majority view is the unambiguous text of 11 U.S.C. § 1325(b)(4)(B) that provides a plan may be shorter than the applicable commitment period only if unsecured creditors are paid in full. The plan in this case proposes to pay unsecured creditors $75.00 per month, a distribution that will not fully pay all unsecured claims. Therefore, the Debtor may not pay off her plan prior to the completion of the three-year applicable commitment period.

For the reasons stated, the objection to confirmation is sustained. The Debtor has twenty (20) days to file a modified plan consistent with this opinion.

IT IS SO ORDERED.