# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3391

_____

In re: Craig Matthew Frederickson,          *
                                            *
          Debtor.                           *
_____                  *
                                            *
David D. Coop,                              *
                                            *
          Appellant,                        *   Appeal from the United States
                                            *   Bankruptcy Appellate Panel
     v.                                     *   for the Eighth Circuit.
                                            *
Craig Matthew Frederickson,                 *
                                            *
          Appellee.                         *
_____                  *
                                            *
National Association of Consumer            *
Bankruptcy Attorneys,                       *
                                            *
          Amicus on Behalf                  *
          of Appellee.                      *

_____

Submitted: April 14, 2008
Filed: October 27, 2008

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This appeal requires us to examine the meaning and application of the phrases "projected disposable income" and "applicable commitment period" in 11 U.S.C. § 1325(b), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The specific question before us is whether an above-median Chapter 13 debtor's plan must extend for five years, i.e., the length of the "applicable commitment period," or whether a bankruptcy court can confirm a shorter plan period when the debtor has a negative "disposable income" as defined in 11 U.S.C. § 1325(b)(2) and calculated on Form 22C. The bankruptcy court held that a shorter plan period is permissible and thus confirmed Craig Matthew Frederickson's (the debtor's) proposed forty-eight-month plan. In re Frederickson, 368 B.R. 825 (Bankr. E.D. Ark. 2007). The Bankruptcy Appellate Panel for the Eighth Circuit affirmed. Coop v. Frederickson (In re Frederickson), 375 B.R. 829 (B.A.P. 8th Cir. 2007). Having jurisdiction under 28 U.S.C. § 158(d), we reverse.

## I. Background

The facts of this case are not in dispute. Frederickson's current monthly income is above the median income level for his state of residence, and therefore he is an "above-median" debtor. See 11 U.S.C. § 1325(b)(3). His disposable income, defined in 11 U.S.C. § 1325(b)(2) and calculated on Form 22C,[1] is a negative amount ($ -95.49). The parties agree that because of this calculation, Frederickson has no "projected disposable income" as referred to in 11 U.S.C. § 1325(b)(1)(B).

---

[1]"Disposable income" is defined as the "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . ." 11 U.S.C. § 1325(b)(2). "Current monthly income" is based upon historical figures, namely, the average monthly income the debtor received during the six months prior to filing for bankruptcy. 11 U.S.C. § 101(10A). For above-median debtors, "[a]mounts reasonably necessary to be expended" are calculated in accordance with subparagraphs (A) and (B) of 11 U.S.C. § 707(b)(2). 11 U.S.C. § 1325(b)(3).

Nevertheless, the calculations on Frederickson's Schedule I (current income) and Schedule J (current expenditures) indicate that he has a monthly net income of $606. Frederickson proposed a plan to pay his unsecured creditors $600 per month for forty-eight months. Under this plan, Frederickson's unsecured creditors will receive approximately sixty-one percent of their claims. The trustee objected to this plan because it did not extend for the full five-year "applicable commitment period" referred to in 11 U.S.C. § 1325(b)(4)(A)(ii). If the plan extended for five years, it is estimated that Frederickson's unsecured creditors would receive almost all, if not all, of their claims.

A bankruptcy court may confirm a Chapter 13 debtor's plan if the requirements of 11 U.S.C. § 1325(a) are satisfied. If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, however, the bankruptcy court may approve the plan only if (A) the plan provides for payment of 100% of claims, or (B) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1).

This statutory rubric works when an above-median debtor's disposable income calculated under Form 22C results in a positive number. But because Frederickson has a negative disposable income as calculated on Form 22C and the trustee objected to the proposed plan, the bankruptcy court was required to weigh conflicting interpretations of the relevant portions of the statute. One possible interpretation of 11 U.S.C. § 1325(b)(1)(B) is that if the debtor does not have any "disposable income," and therefore does not have any "projected disposable income," the debtor's proposed plan can be confirmed regardless of the amount proposed to be paid and the length of the plan because the amount of projected disposable income "to be received in the

-3-

applicable commitment period" is $0.[2] A second possible interpretation is that the "applicable commitment period," as defined in 11 U.S.C. § 1325(b)(4) and used in 11 U.S.C. § 1325(b)(1)(B), is a temporal requirement that must be met even if the debtor does not have any projected disposable income.

The parties have stipulated that Frederickson does not have any "projected disposable income" and therefore "there is no minimal amount which must be paid to the general unsecured creditors." See In re Frederickson, 368 B.R. at 828 n.5. This concession assumes that the requirement set forth in 11 U.S.C. § 1325(b)(1)(B) creates a minimum payment requirement and that no minimum exists if the debtor has no projected disposable income. Accordingly, the bankruptcy court determined that a debtor's proposed plan could be confirmed over the trustee's objections despite the fact that it does not extend for the full applicable commitment period because there is no minimum payment and therefore the applicable commitment period does not apply. At the same time, the bankruptcy court determined that when a debtor has positive disposable income, the "applicable commitment period" applies and creates a temporal requirement, i.e., a minimum plan length requirement. Thus, the bankruptcy court held that when a trustee objects to an above-median debtor's proposed plan in situations in which the debtor has positive disposable income, the plan cannot be confirmed unless it provides for payment of all projected disposable income over a period of five years, 11 U.S.C. § 1325(b)(1)(B), or the plan provides for payment in full of all allowed unsecured claims, 11 U.S.C. § 1325(b)(4)(B).

Judge Federman dissented from the bankruptcy appellate panel's affirmance, concluding that the "applicable commitment period" is always a temporal requirement. Citing the House Report on § 1325, he wrote that

---

[2]Of course, the good faith, feasibility, and other general requirements of 11 U.S.C. § 1325(a) must still be met.

> BAPCPA was intended by Congress to require that higher income debtors either pay 100% of unsecured claims, or make payments for a period of 5 years. While there is scant legislative history for most of the BAPCPA provisions, the House Report on § 1325(b) makes clear that the applicable commitment period is a durational requirement for the Chapter 13 plan, and not just, as the majority holds, a multiplier.

In re Frederickson, 375 B.R. at 837 (Federman, J., dissenting).

## II. Discussion

Because we are reviewing only legal conclusions made by the bankruptcy court, our review is *de novo*. DeBold v. Case, 452 F.3d 756, 761 (8th Cir. 2006).

To determine the congressional intent of statutory text, we begin by looking at the text itself. Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). Generally, when the statutory text is plain and does not lead to an absurd result, the sole function of the courts is to enforce the plain language of the statute. Id. When the text leads to a result that is seemingly at odds with the congressional intent of the text, however, the plain language is not conclusive. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).

Along with these general rules of statutory construction, the Supreme Court has also acknowledged that in determining the true congressional intent of a statute it can be appropriate to consider all available evidence of that intent rather than limiting the analysis to the text of the statute. Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 65-66 (2004) (Stevens, J., concurring) (citing Wisc. Pub. Intervenor v. Mortier, 501 U.S. 597, 611 n.4 (1991), and other Supreme Court cases). Thus, when the statutory text is not altogether clear and there is more than one plausible interpretation of the text, it is proper to consult extratextual sources to determine congressional intent. Id.; see also id. at 66-67 (Kennedy, J., concurring).

We are presented with that very situation in the case before us. The debtor and the trustee have presented possible interpretations of the text that are supported by authority. Indeed, the differing outcomes of the bankruptcy courts that have examined this issue to date indicate that the language of 11 U.S.C. § 1325(b) is not at all clear. See In re Laroy Davis, 392 B.R. 132, 137-41 (Bankr. E.D. Pa. 2008) (outlining cases that are divided on how to calculate a debtor's "projected disposable income"); id. at 143-46 (outlining cases that are divided on whether the "applicable commitment period" is a monetary or temporal requirement); see also In re Green, 378 B.R. 30, 33 (Bank. N.D. N.Y. 2007) (noting that BAPCPA rendered § 1325(b) "a murky stew of conflicting judicial opinions about the plain language meaning of common words and phrases contained in the statute itself and the Congressional intent behind it"); In re Slusher, 359 B.R. 290, 300 (Bankr. Nev. 2007) ("Although apparently straightforward, as with much of BAPCPA, the text Congress used plausibly lends itself to at least two different interpretations of what exactly 'applicable commitment period' means.").

Neither interpretation fits neatly into the structure of 11 U.S.C. § 1325(b) and simultaneously complies with the overarching purpose of BAPCPA. Frederickson argues that the "applicable commitment period" is not a temporal requirement if the debtor has no "disposable income" as calculated on Form 22C, even if the debtor has disposable income as calculated on Schedules I and J. The resulting outcome of this interpretation is that an above-median debtor who has more actual income than actual expenses, after taking into consideration payment to secured creditors, can have his proposed plan approved without making any payments to unsecured creditors and can close out his plan in a matter of months rather than staying in the system for the full "applicable commitment period" of sixty months.[3] This result does not comport with the clear congressional intent of BAPCPA, which was enacted "'to ensure that debtors

[3]At oral argument, counsel for the trustee indicated that she had already seen one Chapter 13 case close out after seven months under the bankruptcy court's holding in this case.

repay creditors the maximum they can afford.'"  See In re Gonzalez, 388 B.R. 292, 309 (Bank. S.D. Tex. 2008) (quoting H.R. Rep. No. 109-31, pt. 1, at 2 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89); see also In re Hardacre, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006) ("The means test was intended to 'ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so." (alteration in original) (quoting 151 Cong. Rec. S2470 (March 10, 2005)); Henry E. Hildebrand, III, Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees, 79 Am. Bankr. L.J. 373, 373, 396 n.3 (2005) (noting that BAPCPA represented a shift in public policy from making "bankruptcy a more effective remedy for the unfortunate consumer debtor," to "restoring personal responsibility and integrity to the bankruptcy system" (internal quotations omitted)).

The trustee argues that "applicable commitment period" in subsection (b)(1)(B) is a temporal requirement because in subsection (b)(4) that phrase is defined in durational terms rather than as a minimum payment requirement.  This interpretation is congruous with the overall structure of the section when the debtor's Form 22C calculation results in a positive disposable income.  But when the debtor's disposable income is zero or a negative amount, we must either ignore Congress's definition of "disposable income," which the statute indicates "shall" be applied for above-median debtors, or we must read a temporal requirement into the language of  11 U.S.C. § 1325(b)(1)(B) by disallowing the confirmation of a proposed plan even though "the debtor's projected disposable income" to be received in the "applicable commitment period," i.e., $0, is paid to the debtor's unsecured creditors under the plan.  Such an interpretation leads to anomalous results because a debtor's proposed plan to pay $1 each month for sixty months could be approved, while a plan that proposed to pay $1000 per month for fifty-nine months could not be approved.[4]  See In re Nance, 371

---

[4]Assuming, of course, that the plan met all other requirements, such as good faith.  See 11 U.S.C. § 1325(a); Laroy Davis, 392 B.R. at 134-35 (discussing confirmation requirements in 11 U.S.C. § 1322 and the nine confirmation provisions in 11 U.S.C. § 1325(a)).

B.R. 358, 371-72 (Bankr. S.D. Ill. 2007) (acknowledging that anomalies result from requiring a sixty-month plan period for an above-median debtor who has negative disposable income). This result, like the outcome of the debtor's interpretation of the statute, ultimately does not achieve the congressional intent of requiring above-median debtors to pay their unsecured creditors the maximum they can afford in every case, because a debtor could propose a plan to pay $1 per month despite the fact that he can actually afford a larger payment.

In resolving this issue, we look to Congress's intent that under BAPCPA increased payments will flow from above-median debtors to their unsecured creditors. Accordingly, we must determine not only the meaning of the phrase "applicable commitment period," but also the phrase "projected disposable income."[5]

In enacting BAPCPA, Congress reduced the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses. Richard S. Stolker, Debtor's Perspective: BAPCPA Issues, 40 Md. B.J. 22, May/June 2007, at 23. In determining a debtor's projected disposable income pre-BAPCPA, the bankruptcy court calculated a debtor's disposable income based on Schedules I and J and then multiplied that number by the number of months in the plan. Laroy Davis, 392 B.R. at 136; In re Kolb, 366 B.R. 802, 808-09 (Bankr. S.D. Ohio 2007) (discussing the pre-BAPCPA calculation of "disposable income" and "projected disposable income"). This process remains the same post-BAPCPA for below-median debtors. Kolb, 366 B.R. at 809-12. But for above-median debtors,

---

[5]We acknowledge that the trustee in this case has conceded that because Frederickson does not have any "disposable income" as defined in 11 U.S.C. § 1325(b)(2), he does not have a minimum payment requirement under 11 U.S.C. § 1325(b)(1)(B). Appellant's Br. at 9. This concession assumes that the definition of "projected disposable income" is the same as the definition of "disposable income." Because we conclude otherwise, we must consider the proper interpretation of "projected disposable income."

Congress wanted to eliminate what it perceived as widespread abuse of the system by curtailing the bankruptcy courts' discretion and requiring debtors to pay more to their unsecured creditors. See id. at 812 (noting Congress's intent to reduce judicial discretion over the calculation of an above-median debtor's expenses). Accordingly, Congress rigidly defined "disposable income" in 11 U.S.C. § 1325(b)(2). At the same time, however, Congress did not define "projected disposable income" as used in 11 U.S.C. § 1325(b)(1)(B).

As a result, the proper calculation for "projected disposable income" is not clear. We could postulate that a debtor who had $727 in disposable income each month in the six months prior to filing for bankruptcy, as calculated on Form 22C, will have $727 each month in disposable income in the future. Then, using the same method that was used pre-BAPCPA, we would simply multiply the debtor's "disposable income" by the number of months in the applicable commitment period to determine how much "projected disposable income" the debtor will likely receive in that period of time. Such a calculation works if the debtor has a positive "disposable income." If the debtor's "disposable income" is negative, however, despite the fact that the debtor could afford to make payments to his unsecured creditors, it is necessary to determine whether the "applicable commitment period" is a temporal requirement or a monetary requirement.

This problem arises because "disposable income" is based upon a debtor's historical income and IRS tables that provide regional averages for common expenses. This calculation may lead to an accurate projection of a debtor's "projected disposable income," but it is not necessarily an accurate projection for many Chapter 13 debtors. The historical calculation does not take into consideration a debtor's current financial situation, which may have changed substantially between the point in time six months before filing bankruptcy and the point in time when the debtor's Chapter 13 plan is being proposed. These changes could be the result of, *inter alia*, a promotion at work, the loss of a job, the acquiring of a second job, or increased medical expenses. See,

e.g., In re Hanks, 362 B.R. 494, 496 (Bankr. Utah 2007) (debtor lost his job prepetition and was unable to obtain comparably paying employment); In re Grady, 343 B.R. 747, 750 (Bankr. N.D. Ga. 2006) (debtor's heart condition prevented her from working and thus reduced her actual monthly income). Furthermore, the debtor's actual expenses may be far less than the regional averages that are assumed in the "disposable income" calculation. As a result, a debtor's "disposable income," as calculated on Form 22C, is not the same as the debtor's actual "projected disposable income." See Kolb, 366 B.R. at 804-05 (BAPCPA's definition for a debtor's "disposable income" does not reflect a debtor's present actual income or actual expenses).

Thus, a distinction can be drawn between a debtor's "disposable income," which is calculated solely on the basis of historical numbers and regional averages, and a debtor's "projected disposable income," which necessarily contemplates a forward-looking number. Under this interpretation, bankruptcy courts will continue to have some discretion over the calculations of each individual debtor's financial situation, with the result that the debtor's "projected disposable income" will end up more closely aligning with reality. This interpretation also comports with the congressional intent that above-median debtors pay the maximum they can afford and results in making workable the application of 11 U.S.C. § 1325(b)(1)(B) for above-median debtors who have positive "disposable income," as well as for above-median debtors with negative "disposable income." If we read the word "projected" out of 11 U.S.C. § 1325(b)(1)(B) and rely solely on the calculation of "disposable income" on Form 22C, the outcome involves anomalous, and perhaps even absurd, results. See Gonzalez, 388 B.R. at 304-05, 308-09 (rigid adherence to a debtor's historical income would produce results inconsistent with the congressional purpose of BAPCPA and inconsistent with common sense); see also Hardacre, 338 B.R. at 723 (Congress must have intended "disposable income" to be something different than "projected disposable income" or it would have used the same language in both places in the statute). While some debtors who could actually afford to pay off some or all of their

unsecured creditors would be able to close out their Chapter 13 plan without doing so, other debtors who had more disposable income in the past than what they are likely to receive in the future would be forced to confirm a plan that they could not maintain.

Accordingly, we adopt the view shared by many bankruptcy courts that a debtor's "disposable income" calculation on Form 22C is a starting point for determining the debtor's "projected disposable income," but that the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J. See In re Kibbe, 361 B.R. 302, 314-15 (B.A.P. 1st Cir. 2007) (per curiam) (Form 22C is the starting point for determination of "projected disposable income," but if material changes have occurred, bankruptcy court can look at other information to make fact-based determination of debtor's projected disposable income); In re Lanning, 380 B.R. 17, 24-25 (B.A.P. 10th Cir. 2007) (same); Slusher, 359 B.R. at 299-300 (holding that a debtor's "disposable income" as calculated under 11 U.S.C. § 1325(b)(2) is not the same as a debtor's "projected disposable income," but that it can be used as the presumptive "projected disposable income"); In re Pak, 357 B.R. 549, 552 (Bank. N.D. Cal. 2006) (to determine a debtor's "projected disposable income," the court should try to predict the disposable income that the debtor will receive during the plan using the definition of "current monthly income" in 11 U.S.C. § 101(10A)); In re Casey, 356 B.R. 519, 527-28 (Bankr. E.D. Wash. 2006) (court looked beyond Form 22C to determine debtor's projected disposable income and held that the "applicable commitment period" is a temporal requirement); In re Fuller, 346 B.R. 472, 485 (Bankr. S.D. Ill. 2006) (for above-median debtors, "projected disposable income" equals income calculation from Schedule I minus standardized expenses from Form 22C); Grady, 343 B.R. 747, 752-53 (calculating "projected disposable income" from Schedules I and J due to debtor's heart condition and inability to work); In re Jass, 340 B.R. 411, 418-19 (Bankr. Utah 2006) (Form 22C is presumed to be the debtor's "projected disposable income" unless the debtor can show there has been a substantial change in circumstances, in which case the court

can look to Schedules I and J); <u>Hardacre</u>, 338 B.R. at 722-23 ("projected disposable income" must be based on anticipated income rather than merely an average of past income).

This approach realistically determines how much a debtor can afford to pay his creditors and maximizes the amount the debtor must pay to his unsecured creditors. As aptly noted by the <u>Kibbe</u> court, "the object is not to select the right form, but to reach a reality-based determination of a debtor's capabilities to repay creditors." <u>Kibbe</u>, 361 B.R. at 315. Additionally, under this interpretation, the "applicable commitment period" is logically a temporal requirement that does not lead to anomalous or absurd results.[6] <u>See</u> <u>Nance</u>, 371 B.R. at 370 (citing H.R. Rep. No. 109-31, pt. I (2005), *as reprinted in* 2005 U.S.C.C.A.N. p. 88, 146, for the proposition that Congress intended the "applicable commitment period" to provide a certain duration length to Chapter 13 plans and noting that there is no evidence that Congress intended to change the minimum plan length requirement in the pre-BAPCPA version of 11 U.S.C. § 1325(b)(1)(B)); <u>Slusher</u>, 359 B.R. at 301 (defining the terms "applicable," "commitment," and "period," and concluding that the phrase "applicable commitment period" indicates a minimum plan length); <u>Casey</u>, 356 B.R. at 527-28 (applying the "applicable commitment period" as a temporal requirement); <u>In re Schanuth</u>, 342 B.R. 601, 606-08 (Bankr. W.D. Mo. 2006) ("applicable commitment period" is a temporal requirement which must be satisfied unless the plan provides for payment in full of all allowed unsecured claims). Thus, we conclude that the bankruptcy court erred by confirming Frederickson's plan because Frederickson actually does have projected

---

[6]We note, of course, that the "applicable commitment period" in 11 U.S.C. § 1325(b)(1)(B) becomes relevant only after a trustee objects to the debtor's proposed plan. Additionally, because it is not before us, our holding does not address the situation in which a debtor has no actual "projected disposable income" after taking into consideration Form 22C, Schedules I and J, and any change to the debtor's financial circumstances.

disposable income and therefore the plan cannot be confirmed over the trustee's objection unless it extends for the entire sixty-month applicable commitment period.

In arriving at our holding, we have given careful consideration to the Ninth Circuit's recent decision in In re Kagenveama, 541 F.3d 868 (9th Cir. 2008), which found persuasive the Eighth Circuit Bankruptcy Appellate Panel's decision in this case. With all due respect to the Ninth Circuit's opinion, we believe that the approach we have taken will more fully accomplish that which Congress intended to achieve through the enactment of BAPCPA.[7]

The judgments of the bankruptcy court and bankruptcy appellate panel are reversed and the case is remanded to the bankruptcy court for further proceedings in accordance with the views expressed in this opinion.

_____

---

[7]Whether BAPCPA has accomplished all that it was designed to achieve is a matter of sharp debate. See Mike Meyers, "A Bankrupt System?," Mpls. Star Tribune, Oct. 12, 2008, at D1.