**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-20066

In the Matter of : PAMELA PAGE NOWLIN,

Debtor.

--------------------------------------------------------------------------

PAMELA PAGE NOWLIN,

Appellant

v.

DAVID G. PEAKE,

Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DENNIS, and ELROD, Circuit Judges.

JENNIFER W. ELROD, Circuit Judge:

This bankruptcy case requires us to interpret the phrase "projected disposable income" in 11 U.S.C. § 1325(b)(1) for above-median debtors seeking plan confirmation under Chapter 13. We interpret the phrase to allow consideration of reasonably certain future events by bankruptcy courts. Under this approach, an above-median Chapter 13 debtor's "projected disposable income" presumptively consists of his statutorily defined "disposable income"

mechanically projected into the future for the duration of the plan. This presumption may be rebutted during the confirmation hearing with evidence of present or reasonably certain future events that will affect the debtor's income or expenses. In so holding, we join the majority of circuits to have considered the issue.

## I. FACTS AND PROCEEDINGS

The facts relevant to this appeal are undisputed. Pamela Page Nowlin filed for Chapter 13 bankruptcy on September 14, 2006, simultaneously filing the required schedules and her proposed payment plan. She listed on Schedule I monthly income of $7,145.86, and monthly deductions of, among other items, $1,062.51 for her 401(k) plan, and $1,134.79 to repay a 401(k) loan. She listed on Schedule J a monthly net income of $195.64. Nowlin also filed Form B22C, listing a six-month averaged monthly income of $7,420.53. Because Nowlin's annualized income of $89,046.36 is more than the median family income for a single person household in Texas ($34,408.00), she is an "above-median debtor." That designation requires a minimum applicable commitment period of five years under 11 U.S.C. § 1325(b)(4) and the use of standard IRS expense deductions[1] on her form B22C. After taking allowed deductions, the B22C form listed a monthly disposable income of $38.67.[2] Over sixty months, this would result in payments to unsecured creditors of $2,320.20.

Nowlin's proposed plan allocated $195.00 per month for creditors over the sixty-month term, resulting in total payments to general unsecured creditors of $1,814.19, or about six percent of the total general unsecured claims of

---

[1] *See* 11 U.S.C. § 707(b)(2)(requiring use of the National Standards and Local Standards determined by the IRS). These standard deductions vary by region and are currently available at http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm.

[2] The form itself lists a monthly disposable income of $28.67, but Nowlin admitted the number was off by $10.00 due to an inadvertent error.

$32,889.87.[3]  Nowlin filed an amended plan on December 7, 2006, which modified the amount of the IRS's priority claim,[4] resulting in total payments to general unsecured creditors of $980.45, or about three percent of the total claims.

The Chapter 13 Trustee opposed confirmation of Nowlin's amended plan. At a hearing on the matter, Nowlin testified that the loan from her 401(k) plan would be repaid within two years, which would free up an additional $1,134.79 a month. She also testified that her 401(k) contributions were capped at $15,000 a year, or $1,250.00 a month. Nowlin argued to the bankruptcy court that the additional money in her budget after the loan is repaid should not be considered for confirmation purposes because the calculation of "projected disposable income" under § 1325(b)(1) should be mechanical, involving nothing more than (1) determining her current disposable income under § 1325(b)(2), and (2) multiplying that amount by the plan's term. The Trustee argued that projecting income should allow for the consideration of known future events, and thus the additional money should be diverted to repay creditors.

The bankruptcy court denied confirmation of Nowlin's proposed plan. The court rejected Nowlin's mechanical interpretation of "projected disposable income," and instead held "that 'projected disposable income' . . . requires the Debtor to account for any events which will definitely occur during the term of the Plan that would alter either the income or expense side of the disposable income calculation." Thus, the bankruptcy court reasoned that after Nowlin had paid off her 401(k) loan, she could contribute an additional $187.49 to her 401(k)

---

[3] Nowlin listed the Trustee's fee at $930.15 and the priority claims of her bankruptcy attorney and the IRS at $1,000 and $7,955.66, respectively. Thus, of the proposed payments totaling $11,700, only $1,814.19 was left for general unsecured creditors.

[4] The new sum was $9,023.40. Also, the Trustee's fee was reduced in the amended plan to $696.15.

plan, which would bring her monthly 401(k) contributions to the maximum of $1,250.00 per month. The remaining funds ($947.30) could then be paid to the Trustee for distribution to creditors. Because Nowlin's proposed plan did not allocate all of her projected disposable income to pay her creditors, the bankruptcy court denied confirmation of the plan under § 1325(b)(1). Nowlin appealed and the district court affirmed, adopting the bankruptcy court's reasoning. Nowlin timely appealed to this court.

## II. DISCUSSION

Our circuit has yet to interpret § 1325(b) in light of the changes made by Congress with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (BAPCPA), and our sister circuits are split on the matter. The debate centers on the BAPCPA's new definition of "disposable income" in § 1325(b)(2) and its effect on the meaning of "projected disposable income" in § 1325(b)(1)(B). We review issues of statutory interpretation *de novo*. *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008).

*A.____ The Statute*

When interpreting a statute, we begin by examining its language. *See, e.g., Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). When the language is plain, we must enforce the statute's plain meaning, unless absurd. *Id.* "[S]tatutory language must be read in context [since] a phrase gathers meaning from the words around it." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (alteration in original) (quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

As amended by the BAPCPA, section 1325(b) provides in pertinent part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not

approve the plan unless, *as of the effective date of the plan–*

> . . . .
>
> (B) the plan provides that all of the debtor's *projected disposable income to be received in the applicable commitment period* beginning on the date that the first payment is due under the plan *will be applied to make payments* to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term *"disposable income"* means *current monthly income* received by the debtor . . . less amounts reasonably necessary to be expended–
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions . . . ; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b) (emphases added). The phrase "current monthly income" (CMI) is defined as the average monthly income of the debtor from all sources over the six-month period preceding the filing of the schedule of current income required by § 521(a). 11 U.S.C. § 101(10A).

In the BAPCPA, Congress modified § 1325(b)'s definition of "disposable income" by using an average of past monthly income and by adding means-testing for above-median debtors.[5] Section 1325(b)(3) incorporates certain rules of 11 U.S.C. § 707(b)(2) to determine allowed expenses for these debtors, substituting IRS standard expense deductions for the debtor's actual expenses as shown on schedule J. The above-median debtor must file Form 22C

---

[5] A debtor is above-median if her annualized CMI is greater than a state-specific standard for income. § 1325(b)(3).

(previously Form B22C), which uses the standardized calculations, and the debtor's disposable income calculated on this form may well differ from the debtor's actual disposable income reflected on schedules I and J.

The BAPCPA did not materially change § 1325(b)(1)(B),[6] and did not change the treatment of projected income. Our task is to interpret the phrase "projected disposable income" in light of the new definition of "disposable income" in § 1325(b)(2).

*B.     Analysis*

Both parties contend the statute's plain language favors their interpretation, and courts reaching opposite results have similarly claimed this high ground of statutory interpretation. The competing interpretations are, in brief: (1) a mechanical approach, favored by Nowlin, in which "projected" is simply a mathematical task of multiplying the "disposable income" calculated under § 1325(b)(2) by the term of the applicable commitment period; and (2) a forward-looking approach, favored by the Trustee, in which projection allows the bankruptcy court to consider evidence of substantial changes to the debtor's income or expenses that have occurred before confirmation or will occur within the plan's period. We recognize that both approaches create difficulties, but we are persuaded that the Trustee's approach best comports with the statutory language.

As noted, Congress changed the definition of "disposable income" in § 1325(b)(2), but left unchanged the phrase "projected disposable income" in § 1325(b)(1)(B). We are persuaded that the independent definition of "projected" adds to the phrase's overall meaning. The term "projected," not defined in the statute, means "[t]o calculate, estimate, or predict (something in the future),

---

[6] The BAPCPA changed this subparagraph to apply projected disposable income (1) to unsecured creditors specifically, and (2) for the applicable commitment period, which now can vary depending on the debtor's classification as above- or below-median. *See* § 1325(b)(4).

based on present data or trends." *In re Jass*, 340 B.R. at 415 (quoting the Am. Heritage College Dictionary 1115 (4th ed. 2002)). In view of this definition, with which Nowlin agrees, we interpret the phrase "projected disposable income" to embrace a forward-looking view grounded in the present via the statutory definition of "disposable income" premised on historical data. The statutorily defined "disposable income" is the starting point—it is presumptively correct—from which the bankruptcy court projects that income over the course of the plan. Under this interpretation, the statutory definition of "disposable income" is integral to the bankruptcy court's decision to confirm or reject a Chapter 13 debtor's proposed plan.

Additional language in § 1325(b)(1) supports this conclusion. Specifically, the statute speaks of "the debtor's projected disposable income *to be received in the applicable commitment period*." This language links "projected disposable income" with the debtor's income actually received during the plan, and indicates a forward-looking orientation of the phrase. Further, the statute requires the projection to be performed "as of the effective date of the plan," which allows for consideration of evidence at the time of the plan's confirmation that may alter the historical calculation of disposable income on Form 22C. Finally, the statute directs that projected disposable income "be applied to make payments," contemplating that the debtor will actually receive this money in the first place. If the debtor's income on Form 22C is artificially inflated (being in reality much lower when the plan is confirmed due to a lost job, for example), a mechanical projection based on that number would include income the debtor may never receive. In such a circumstance, it would be problematic for the bankruptcy court *not* to consider the changed circumstances and adjust the projection of income accordingly so that the debtor is not responsible for remitting income that does not exist.

The Eighth and Tenth Circuits have similarly interpreted § 1325(b)(1).

The Eighth Circuit recognized that pre-BAPCPA bankruptcy courts multiplied the debtor's disposable income (as determined by the court) by the plan's fixed three-year term to obtain the debtor's projected disposable income. *See Coop v. Frederickson* (*In re Frederickson*), 545 F.3d 652, 658 (8th Cir. 2008). The court then reasoned that a problem arises under the BAPCPA's new definition of "disposable income" if the debtor has a negative disposable income as calculated on Form 22C using the IRS's standard expenses. Specifically, the court noted that this historically oriented number does not always accurately reflect the debtor's financial condition at the time the bankruptcy court considers the payment plan. *Id.* at 658–59. The court pointed to changes that may have occurred, such as "a promotion at work, the loss of a job, the acquiring of a second job, or increased medical expenses." *Id.* at 659. Finally, the court recognized that a debtor's actual expenses may differ from the standard expenses. *Id.* For these reasons, the court drew a distinction between "disposable income" and "projected disposable income," reasoning that reading "the word 'projected' out of . . . § 1325(b)(1)(B) and rely[ing] solely on the calculation of 'disposable income' on Form 22C, [produces] anomalous, and perhaps even absurd, results." *Id.*

The Eighth Circuit concluded that the calculation of "disposable income" under § 1325(b)(2) creates a starting point, or presumption, for projection into the future. *See id.* This flexible approach allows the debtor, the trustee, or a creditor to present rebuttal evidence showing that circumstances have changed and the historical figure needs to be modified to accurately reflect the debtor's finances going forward. Building on the statutory tension between the historically calculated "disposable income" concept and the future-oriented "projected disposable income" language, the court noted that "[u]nder this interpretation, bankruptcy courts will continue to have some discretion over the calculations of each individual debtor's financial situation, with the result that

the debtor's 'projected disposable income' will end up more closely aligning with reality." *Id.*

The Tenth Circuit likewise has held that, "as to the income side of the § 1325(b)(1)(B) inquiry, the starting point for calculating a Chapter 13 debtor's 'projected disposable income' is presumed to be the debtor's 'current monthly income' . . . subject to a showing of a substantial change in circumstances." *Hamilton v. Lanning* (*In re Lanning*), 545 F.3d 1269, 1282 (10th Cir. 2008). The court identified three statutory phrases that, in its opinion, the mechanical approach failed to explain adequately: (1) "as of the effective date of the plan"; (2) "to be received in the applicable commitment period"; and (3) "will be applied to make payments." *Id.* at 1279. The first of these phrases indicates that the bankruptcy court is to consider whether the plan meets the statutory requirements (including the application of projected disposable income to pay unsecured creditors) *at confirmation*, which is later in time than the filing of the petition and thus allows a bankruptcy court to consider changed circumstances.[7] Second, linking the latter two phrases together with the word "projected," the court favored the interpretation supplied by the forward-looking approach, which allows bankruptcy courts to forecast how much the debtor expects to receive over the plan's term and apply those funds to pay creditors. Such an interpretation respects the distinction between "projected disposable income" and "disposable income" that Congress "must have intended" based on the differing language. *Id.* at 1280. The court noted that the phrase "to be received in the applicable commitment period" is rendered meaningless in the mechanical approach because of the possibility that the debtor will not have any "expectation of earning enough to produce the amount of 'disposable income' calculated on Form B22C." *Id.*

---

[7] The filing of the petition sets the date from which the historically oriented "current monthly income" is determined. *See* 11 U.S.C. § 101(10A).

The facts of *Lanning* illustrate the Tenth Circuit's concern. The debtor received a buyout from her employer within the six-month window that artificially inflated the income on her schedules. *Id.* at 1271. Her income going forward was substantially less than the amount captured in the look back, yielding a disparity of disposable income of nearly $1,000 between Schedules I and J and Form 22C. *Id.* The trustee argued that the debtor's proposed plan, which was based on her actual income, did not allocate all of her statutorily defined disposable income to repay creditors, despite the fact that simple reliance on Form 22C would require the debtor to pay money she would never receive. *Id.* at 1271–72. By allowing the debtor to rebut the presumption grounded in the statutory definition of current monthly income by showing a "substantial change in circumstances," *id.* at 1282, the court gave meaning to the statutory language discussed above and avoided this problem.[8]

Nowlin disagrees with this analysis, and contends that § 1325(b)(2)'s new definition of "disposable income" requires the mechanical approach. Her basic argument is that divorcing the definition of "projected disposable income" from the definition of "disposable income" violates the plain language of the statute by stripping the latter phrase of any meaningful application. Nowlin favorably cites this language from a bankruptcy court opinion: "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *In re Alexander*, 344 B.R. 749, 749 (Bankr. E.D.N.C.2006); *see also id.* ("[I]n order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math.").

---

[8] Several lower courts have adopted the forward-looking approach. *See, e.g.*, *Hildebrand v. Petro (In re Petro)*, 395 B.R. 369, 377 (B.A.P. 6th Cir. 2008); *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 314–15 (B.A.P. 1st Cir. 2007); *In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006); *In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006). Others have adopted the mechanical approach. *See, e.g.*, *In re Austin*, 372 B.R. 668, 680 (Bankr. D. Vt. 2007); *In re Kolb*, 366 B.R. 802, 817–18 (Bankr. S.D. Ohio 2007); *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006); *In re Barr*, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006).

The Ninth Circuit adopted this reasoning in *Maney v. Kagenveama* (*In re Kagenveama*), 541 F.3d 868 (9th Cir. 2008). The court concluded that "projected" modifies a defined term, "disposable income," and thus if the former term substitutes "any data not covered by the § 1325(b)(2) definition" of the latter, the statutory definition is rendered "surplusage." 541 F.3d at 872–73. The court cited *Anderson v. Satterlee* (*In re Anderson*), 21 F.3d 355 (9th Cir. 1994), for the proposition that "projected disposable income" is bound to the definition of "disposable income." *Kagenveama*, 541 F.3d at 873. In *Anderson*, the court interpreted the previous version of § 1325(b)(1)(B), and concluded that it required two steps: (1) "multiplying the debtor's monthly income" by the plan's term; and (2) determining the debtor's disposable income. 21 F.3d at 357. Because the statute now defines "disposable income" objectively, all that remains is for courts to multiply that calculation by the term of the plan. Because of its holding in *Anderson*, the court refused to equate "projected" with "anticipated." *Kagenveama*, 541 F.3d at 874.[9]

As our analysis of the statute suggests, we are not persuaded that considering a present or reasonably certain future change of circumstances, and adjusting the debtor's projected disposable income accordingly, renders § 1325(b)(2)'s definition of "disposable income" surplusage. In short, the mechanical projection of the debtor's statutorily defined "disposable income" serves as the starting point, subject to rebuttal by appropriate evidence of changed circumstances. Thus, the statute's definition is central to the court's

---

[9] *Anderson* relied on a decision of our court, *Commercial Credit Corp. v. Killough* (*In re Killough*), 900 F.2d 61 (5th Cir. 1990), in which we interpreted § 1325(b)(1)(B) to require the two-step analysis adopted by *Anderson*. In *Killough*, we observed that, "[f]or practical purposes, [projecting the debtor's income] is *usually* accomplished by multiplying the debtor's monthly income by [the plan's term]." *Id.* at 64 (emphasis added). We did not mandate that a simple multiplication of disposable income by the plan's term is the final result in all cases. *Killough* is consistent with the approach we adopt today, using the disposable income calculation as a starting point, but allowing consideration of other circumstances when projecting the debtor's income.

task of projecting disposable income.[10]

We join the Eighth and Tenth Circuits in adopting a forward-looking interpretation of "projected disposable income" in § 1325(b)(1). It accounts for the relevant statutory language, including the phrases "to be received in the applicable commitment period," "as of the effective date of the plan," and "will be applied to make payments." The position adopted by Nowlin and the Ninth Circuit fails to address this language, and overly emphasizes the modified definition of "disposable income" without recognizing the independent significance of the word "projected." This word allows for calculation of future income and expenses based on present data, including evidence extrinsic to that used in the calculation of "disposable income" under § 1325(b)(2). Thus, any party could present such evidence of changed circumstances (e.g., finding or losing a job, a promotion, increased medical expenses, etc.), and the bankruptcy court could adjust projections accordingly. In some cases the debtor will seek this adjustment (when he just lost a job, for example), and in others the trustee or a creditor may do so. The statutory language allows for this evidence, and is not limited to a mechanical calculation based strictly on historical information. Thus, we hold that a debtor's "disposable income" calculated under § 1325(b)(2) and multiplied by the applicable commitment period is presumptively the debtor's "projected disposable income" under § 1325(b)(1)(B), but that any party may rebut this presumption by presenting evidence of present or reasonably certain future events that substantially change the debtor's financial situation.

---

[10] Nowlin also argues that Congress knows how to create a presumption, and did not use appropriate language in § 1325(b)(2) to do so. *See also Kagenveama*, 541 F.3d at 874 (making the same argument). The Ninth Circuit further reasoned that the BAPCPA's modification of "disposable income" to make the calculation more objective by use of means testing undermines any attempt to use that definition as a starting point for future projections. *Id.* Such arguments, however, ignore other statutory language, including the phrases "to be received in the applicable commitment period," "as of the effective date of the plan," and "will be applied to make payments." Like the Tenth Circuit, we are persuaded that we cannot ignore this statutory language. *See Lanning*, 545 F.3d at 1278–79.

This conclusion accords with our decision in *Killough* and its embrace of the mechanical approach as the starting point. The language we used—projecting a debtor's income "usually" involves multiplying his disposable income by the plan's term—allows for consideration of other factors in appropriate circumstances. In many, if not most, cases, the bankruptcy court will do nothing more than simple arithmetic. That will "usually" suffice. In other cases, however, the bankruptcy court must consider changed circumstances that will affect future income or expenses.[11]

We note a factual difference between this case and those decided by our sister circuits, one that necessitates a final consideration. In these prior cases, a change in circumstances that had already occurred by the time of the confirmation hearing necessitated alteration of the debtors' historical figures when projecting them into the future. In *Lanning*, for example, the debtor's new job paid less than the Form 22C income figure indicated. 545 F.3d at 1271. In *Fredrickson*, the debtor's Form 22C income was a negative number even though he had actual disposable income. 545 F.3d at 654. The same is true of *Kagenveama*. 541 F.3d at 871. Here, in contrast, the relevant event (full payment of the 401(k) loan) will not occur until several years in the future (when considered from the bankruptcy court's perspective at confirmation). This factual difference does not necessitate a different analysis, but does require a standard by which bankruptcy courts can judge the certainty of future events before entering those events into the calculus of projected disposable income.

The bankruptcy court limited its holding to consideration of events that "will definitely occur during the term of the Plan that would alter either the income or expense side of the disposable income calculation." While urging this

---

[11] The parties make additional arguments based on legislative intent, but we find the statute's language sufficiently plain to alleviate the need for such analysis. In any event, the legislative materials are inconclusive and of little help. *See Lanning*, 545 F.3d at 1280.

court to affirm, the United States as amicus asks us to adopt a broader standard, one that allows consideration of "likely" future events. We decline to do so. We agree with the bankruptcy court that future events must be reasonably certain or else the task of projecting disposable income may stray too far from the statutorily defined starting point. "Project[ing]" is not speculating, and must be based on known facts. Future events need not, however, be absolutely certain. We can predict very few future events with absolute certainty—indeed, Mr. Franklin's adage regarding death and taxes springs to mind—leading us to adopt a construction that fits our limited prescience. We hold that a bankruptcy court may consider reasonably certain future events when evaluating a Chapter 13 plan for confirmation under § 1325. Some events may be too speculative, such as the fluctuation of an investment market during the plan's term and its impact on the debtor's budget. Other events are much more certain, as in this case where the debtor will pay off a debt at a date certain. If the event is less than reasonably certain to occur, amendment under 11 U.S.C. § 1329 is the appropriate way to proceed if a party wishes to change the plan.

## CONCLUSION

The parties in this case dispute whether bankruptcy courts may consider a future event that is reasonably certain to occur at the time of projecting the debtor's disposable income. For the reasons stated, we conclude that bankruptcy courts may consider such events and adjust projections of disposable income accordingly. Because Nowlin's proposed plan did not include all of her "projected disposable income" in payments to creditors following the repayment of her 401(k) loan, which was reasonably certain to occur on or before the twenty-fourth month of her sixty-month plan, the bankruptcy court properly denied confirmation under § 1325(b)(1).

The district court's judgment is AFFIRMED.

14