NON-PRECEDENTIAL DECISION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 11, 2009
Decided June 21, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 09-1212

| | |
|---|---|
| In re RICHARD T. JOHNSON, *et al.*, <br>                 *Debtors-Appellees.* | Appeal from the United States <br> Bankruptcy Court for the Northern <br> District of Illinois, Eastern Division |
| Appeal of: MARILYN O. MARSHALL, <br>                 *Trustee.* | No. 08-B-12062 <br><br> Eugene R. Wedoff, *Bankruptcy Judge.* |

**ORDER**

In the months before debtors Richard and Linda Johnson filed their Chapter 13 bankruptcy petition, their monthly income was temporarily elevated by workers compensation payments that Mrs. Johnson was receiving. Because those payments had ceased by the time the Johnsons filed their bankruptcy petition, the payment plan that the Johnsons proposed did not recognize the workers compensation as ongoing income that was available to satisfy their debts. Trustee Marilyn O. Marshall nonetheless objected to the proposed plan, contending that the "projected disposable income" which 11 U.S.C. § 1325(b)(1)(B) compels the debtors to devote to repayment of their debts must be calculated on the basis of the debtors' average monthly income in the six months before they filed their bankruptcy petition, regardless of changes in income that have occurred or will occur after that six-month period. R. 24. The bankruptcy court overruled Marshall's

objection, *In re Johnson*, 400 B.R. 639 (Bankr. N.D. Ill. 2009), and confirmed the plan, R. 59.   Marshall appealed, the bankruptcy court certified the appeal as appropriate for direct appeal to this court, R. 65-1, and we granted Marshall's request to accept the certification.  *See*  28 U.S.C. § 158(d)(2)(B)(i).  We held our decision in abeyance pending the Supreme Court's decision in *Hamilton v. Lanning*, 2010 WL 2243704 (U.S. June 7, 2010), and now affirm on the basis of that decision.

When the Johnsons filed their Chapter 13 petition in May 2008, they were both working; they reported a combined gross monthly income of $13,500 on their Schedule I and on Schedule J indicated that they had $3,705 per month after payroll deductions and payment of their actual expenses to devote to their Chapter 13 plan.  The plan proposed payments of $3,700 per month for a period of 60 months, for a total of $220,000.  Of that total, approximately $162,000 would be paid toward the $221,291 in allowed general unsecured claims, meaning that the Johnsons' general unsecured creditors would receive roughly 73% of their claims.  The rest of the payments would be devoted to secured and priority creditors and to administrative expenses.

As required by Fed. R. Bankr. P. 1007(b)(6) and their above-median income, the Johnsons also completed Form 22C – "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" – and submitted it with their proposed plan.  That form calls for a statement of the average monthly income that a debtor has received from all sources in the six calendar months before the debtor filed his bankruptcy petition.  During that six-month look-back period, Linda Johnson had been receiving workers compensation payments for an injury to her hand.  With the inclusion of the workers compensation payments, the Johnsons reported an average gross monthly income of $16,045 and disposable monthly income of $4,540 on Form 22C.  Obviously, those totals were higher than those reported on the Johnsons' Schedules I and J. However, Linda Johnson received the last of her workers compensation payments in April 2008, the month before she and her husband filed their Chapter 13 petition.

Pursuant to section 1325(b)(1), the bankruptcy court may not approve a plan in the face of an objection by the trustee or an unsecured creditor unless the plan requires the debtor either to pay all allowed unsecured claims in full or to pay all of the "projected disposable income" that he is to receive over the duration of the plan toward satisfaction of the unsecured debts.  Section 1325, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23, ("BAPCPA"), does not indicate how the debtor's "projected disposable income" is to be ascertained, but it does define "disposable income"  to include the "current monthly income received by the debtor" (excluding certain sources) "less amounts reasonably necessary to be expended" for the maintenance and support of the debtor and his dependents, for certain charitable contributions, and for business expenditures.  § 1325(b)(2).  The Code in turn defines "current monthly income" to mean "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)" during the six-month look-back period, which generally ends with the filing of the bankruptcy petition.  11 U.S.C. § 101(10A)(A).  This is the income reported on Form 22C.

Marshall objected to the Johnsons' proposed plan on the ground that it did not devote all of their projected disposable income, as defined by the Code, to repayment of

their unsecured debts. Because the Code defines "disposable income" to include the debtor's average monthly income from all sources during the six-month look-back period, and the Johnsons' monthly income during that period included Mrs. Johnson's workers compensation payments, it was the trustee's position that the Johnsons were compelled to include the amount of those payments in the income that they devoted to satisfaction of their debts. In the trustee's view, it was irrelevant that those payments had ceased before the Johnsons filed their petition: the Code called for a mechanical determination of projected disposable income that was essentially blind to whatever changes in a debtor's income that might occur after the six-month look-back period.

The bankruptcy court, as we have noted, overruled the objection. The court confronted a division of authority as to whether it could take into account changes in the debtor's income occurring after the look-back period in evaluating the sufficiency of the proposed plan. Some courts followed the mechanical or conclusive approach advocated by the trustee and exemplified by the Ninth Circuit's decision in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872-75 (9th Cir. 2008). Others followed a presumptive or forward-looking approach which treated the debtor's average monthly income during the six-month look-back period as a starting point in ascertaining the debtor's projected disposable income, but allowed for adjustments to that average based on subsequent changes in income that had already occurred or were expected to occur. *See Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1278-1282 (10th Cir. 2008); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 658-661 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 1630 (2009). After considering the competing authorities, the bankruptcy court adopted what it described as a "harmonizing" approach. 400 B.R. at 649-50. That approach was consistent with the forward-looking approach adopted by the Eighth and the Tenth Circuits but eschewed any presumption that the average monthly income during the look-back period is a correct measure of the debtor's current monthly income. The problem, as the court saw it, was a conflict between the backward-looking definition of "current monthly income" set forth in section 101(10A) and the forward-looking use of the same term in section 1325(b), which requires the payment of the disposable income "projected . . . to be received" during the plan's repayment period. *Id.* at 649. Although that conflict was irreconcilable, in the court's view, both provisions could be given effect to some degree, and thereby harmonized, by employing the inclusions and exclusions from "current monthly income" set forth in section 101(10A), but applying them not in the retrospective manner specified by that provision but rather in the forward-looking manner envisioned by section 1325(b). *Id.* The Johnsons had prepared an amended Form 22C in response to the trustee's objection which reflected the monthly income they were receiving as of the date their Chapter 13 petition was filed and, because the workers compensation payments had ceased prior to that date, excluded those payments. In the court's view, the amended Form 22C accurately reflected the Johnson's income in accord with the inclusions and exclusions specified by section 101(10A) and was also consistent with the income that the Johnsons would actually be receiving over the duration of the plan. *Id.* at 651. Treating the current income reported on the amended form as the Johnsons' projected disposable income for purposes of section 1325(b), the proposed plan was sufficient in that it devoted virtually all of that income to repayment of the Johnsons' debts. *Id.* On that basis, the court overruled Marshall's objection and confirmed the plan. *Id.*; R. 59.

After we heard arguments in this appeal, the Supreme Court granted certiorari to review the Tenth Circuit's decision in *Lanning*, and on June 7, the Court affirmed the Tenth Circuit's judgment. Specifically, the court held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." 2010 WL 2243704, at *12. In construing section 1325's use of the term "projected disposable income," the court noted that "in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself"; "[w]hile a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome." *Id.* at *6. Had Congress intended that a debtor's projected disposable income be determined mechanically, simply by multiplying his average monthly income during the six-month look-back period by the number of months in the proposed repayment plan, it likely would have used a term like "multiply" rather than "projected." *Id.* at *6-*7. The Court also noted that case law predating the 2005 BAPCPA amendments to the Code had recognized judicial discretion to account for "known or virtually certain changes in the debtor's income." *Id.* at *7 (coll. cases). Had Congress meant to overrule that well-established line of authority and import a new meaning into the term "projected," it "would have said so expressly." *Id.* The court went on to point out the variety of ways in which the mechanical approach was inconsistent with the forward-looking terms of section 1325(b)(1)(B) and was likely to produce results at odds with congressional intent. *Id.* at *8-*10. And although the trustee in *Lanning* had suggested a number of "maneuvers" by which a debtor might seek to avoid or ameliorate the potentially "harsh" results of the mechanical approach, *id.* at *10, the Court found none of them satisfactory. *Id.* at *10-*11.

The Court's decision in *Lanning* dictates that we affirm the bankruptcy court's judgment in this case. *Lanning* leaves no doubt that a bankruptcy court has the discretion, in calculating the debtor's projected disposable income based on the six-month look-back period, to account for changes in the debtor's income that either have occurred by the time the plan is confirmed or are virtually certain to occur. *Id.* at *12. Here, by the time the Johnsons filed their Chapter 13 petition, the workers compensation payments which were included on their original Form 22C and reflected in the monthly income that the Johnsons received during the six-month period preceding the bankruptcy had already ceased. Consequently, those payments would no longer be a part of the Johnsons' income nor available to fund the plan's proposed payments to their creditors once the plan was confirmed and implemented. Recognizing that reality, the bankruptcy court appropriately excluded the workers compensation payments from the Johnson's projected disposable income, and as the proposed plan otherwise committed virtually all of their projected disposable income to the repayment of their debts, confirmed the plan.

For these reasons, we AFFIRM the bankruptcy court's judgment.